Good afternoon, Rhea Lawrence, on behalf of Johnny Lee. Good afternoon, Ms. Lawrence. If it may please the Court, I'd like to reserve three minutes for rebuttal. I see you're not a big believer in laptops because you come up with a big, fat binder filled with all kinds of goodies, all kinds of papers. It's my comfort binder. Okay. I can relate to that. I like your approach already. Yeah, I can definitely relate to that. Okay. We were asked to brief, as a part of this particular appeal, the jurisdictional issue. And so I'll talk about that briefly before we get to the other issues. In this particular case, the issue was raised that the appeal was untimely, but we believe that the appeal was timely based on the 150-day rule that is contained. The order that was entered here, is that? And maybe it's not just the Virgin Islands. Maybe it's entered in district courts, in other courts in the circuit, and I just haven't seen it before. But I've never, I don't recall seeing an, I wouldn't say order, an entry in a docket quite like this. I'm not quite sure what it did or what it was. We didn't either know what it was. It was very unique. It's not what is referred to as a text-only docket entry? Right, exactly. So you had not seen or heard of this before? We've never seen, well, we've seen text-entry docket orders only when the court is resolving something that it doesn't need to issue a separate order on. And it's listed, you know, text entry only. I don't know what that means. Every order is a text entry. I mean, that's, a death warrant that is signed to put someone to death is a text entry. I don't, I don't know what that means. It's a text entry on the civil docket versus a separate document that's linked. If you, when we see it, we can actually click on a link. Okay, and that's why it says no PDF. And it opens up a PDF document. All right, okay. That there was no separate document here. Okay. And so it became very confusing for us as to, for the appellant as to when his appellate rights would be triggered. And all we had to go on was the 150-day rule. And if based on the entries, it was timed to the T to ensure that whatever that December 27th entry was, if it could possibly trigger based on the 150-day rule, he would be timely. And so this is why it's our position that there's just no way to view the facts as to have this not be a timely appeal. Well, is it a practice here for lawyers to ask the trial judge to enter a Rule 58 order, or is it? No, not necessarily, because this has been the strangest that I have ever seen, because we usually get the words. Well, Ms. Lewis, I cannot tell you how delighted I am to hear you say that. It was very strange. In 20 years, this may be the strangest. It was strange. Concerning the circumstances I have ever seen. And I'm telling you, you've got to know your rules. That's what my law professor taught me. And so we had to go based on the rules and that 150-day, because that's what we had to go on. That's all we had to go on, based on, you know, there was a separate memorandum opinion would be coming shortly, and we were like there was nothing. Did you ever ask the court? I assume you could either by a letter or by a motion. You could ask the court. You could file a motion for clarification to ask the court basically, Your Honor, most respectfully, what the heck did you mean when you said this? Or you could just ask by way of a letter for him to file. We could have that possibility, but I think that's what the 150-day rule is for, and we knew we could rely on that to the extent there was any confusion. Well, there was confusion. We knew that would be our triggering mechanism for appellate rights. You're basically saying 180 days, 30 days from the entry of whatever this is. Yes. And then 150 days from the end of that 30th day. That's exactly right. And I think that's what the rule was there for. So whenever the crazy happens, you have at least that, that you can count on as. Okay. Well, let me go into one other bit of craziness. Why isn't this moot? We've got a wonderful situation here where a consent judgment is entered by an attorney representing both sides of the equation, enters a consent judgment. Your client whom, although it's hard to figure out, I guess your client is Johnny Lee. Mr. Lee. Yes. Okay. Mr. Lee consents to the entry of a judgment for a million dollars against himself. I guess assuming that the insurance company is going to be on the hook for that million dollars. Why isn't that the end of this matter? He's consented to a judgment against him. Well, the mootness issue arises because there was an assignment of all his rights. Right. And this appeal was taken because there were, we wanted to ensure that there would be no adverse implications from whatever this was because there is another proceeding that's moving forward in the superior court. Why isn't that proceeding going to decide any possible issue that could be decided here? I'm sorry? It will. But we were, there's an assignment and a consent judgment, and we're ensuring the integrity of that proceeding by making sure nothing. By mucking up this proceeding. No, no, by making sure there's nothing.  We're trying to make sure that nothing adverse actually happens here because there was a valid assignment and all the interests were transferred. And twice we pleaded with the court, you know, let him in, let Mr. Kitnor in. There's been an assignment, and it was ignored and then denied as moot at some point in time, which was, I think, not moot at all. In the other proceeding? Yes.  You're taking appeal in that proceeding. In this proceeding, it was denied as moot, the decision to substitute. Mr. Kitnor has another, had another proceeding. In the declaratory judgment action, it was denied as moot. Yes. Right. The deck action. Right. He denied it as moot. And we're, you know, that was probably one of the most important things that had to be done. And it was denied as moot after all the. Why wasn't it moot? Given the consent judgment and the assignment of all of his rights against the insurance agent or the insurance broker, Marsh, why isn't it moot? What injustice does your client have left at this point? Well, there is an entry of summary judgment. So it wasn't moot because the court entered summary judgment before he denied the motion for substitution as moot. So there's technically an adverse decision in this case with regard to the insurance coverage. But the only. And the assignment took place. Why would that matter if you consent to a judgment against yourself? I mean, the problem, obviously, is he thought when he entered the consent judgment that he didn't have to worry about it because he's got an insurance policy there. It turns out, and it's not, I don't think, a stretch of the policy. The policy has exclusions that this particular claim would fall within. At least that was the ruling of the district court. So there's his judgment court, basically. There's no one. There may well not be an insurance policy for him to go against. Well, and that brings in the other issues. There were third-party claims. There were counterclaims that were tried to assert. Weren't all those assigned over in the assignment? Well, yes. Okay. But this is why we're ensuring. You're not having any easier time with this thing than I am, are you? You're just stuck with it. But this is why we're trying to ensure that whatever this proceeding that happened before the district judge was, that it would not affect his claims that are now proceeding, the bad faith claims and fraud claims that are proceeding in this case. What do you want us to do? I'm confused at this point. Well, we want to. Because we can't protect you with respect to a collateral proceeding. We can only rule on what's before us. What's before us? The summary judgment order was entered at the time the case. The summary judgment on the declaration. Yes, it was. It was entered at the time the assignment was already issued. It's granted on December 27, 2013 in that text-only entry. Is that right? Correct. The assignment occurred on September 10th. And the opinion comes farther down the line in July 15 of 2014. But only the opinion. We don't have a separate order at that time? There still has been no separate order. There's been a separate order by operation of law. Okay. So. But there's a summary judgment opinion stating right now that there's no coverage, which we believe is erroneous because it was entered at the time the court had no subject matter jurisdiction because there was no case in controversy. The assignment was entered into September 10th. At that point in time, unless the district court had granted substitution, the district court should have dismissed the case, and it did not. And so it entered summary judgment in a matter that no longer had jurisdiction over because there was no case in controversy under Article III. But under the record as it stood at that time, wasn't that exactly the circumstances for which there is a declaratory judgment? The court was being asked to look at the insurance policy and determine whether or not this injury fit within an exclusion, as Lourdes argued that it did. And at that time, there was an adverse party. You had the insurance company on one side, and you had the purportedly insured on the other side. Those two interests were antagonistic to one another, right? Weren't they? Not necessarily. When it was filed? The DEC action, the declaratory judgment act requires there to be adverse, a controversy between particular parties. Right. That party had no. Mr. Lee. Who's that party? Mr. Lee, at that point in time, had no longer had any interest in the insurance policy. Why didn't he? It was all transferred. He assigned it to Mr. Kittners. You're saying he assigned the policy prior to the time the declaratory judgment action was filed? No. After, prior to the summary judgment entry in the declaratory action, after the declaratory judgment action was filed. Okay. So there was jurisdiction under the basis of the good fate of the plain face of the complaint rule, but that jurisdiction was divested, you're saying, the second he assigned the policy? The minute that assignment was entered into, he was divested of. And there's case law that supports that analogy. Judge Sanchez authored an opinion, I believe it's the Brennan case, if I'm not mistaken, where there were patent holders. We're beginning to see the logic of it all now, because it now looks like the assignment of the rights was a way to prevent an adverse ruling in the declaratory judgment action. No, that's not the case. Because you're dealing with the, Kittners first asked to intervene in the action to take over litigation. It was denied. Realizing that he wasn't going to be able to, Mr. Lee realizing he was not going to be able to defend the case, he entered into a valid assignment and consent judgment. This happens all the time in the Virgin Islands, these types of agreements. And he said, okay, Mr. Kittners, this is your assignment, this is your consent judgment, you can go ahead now and pursue all of my claims and all of my rights against the insurer. Well, if that's the case, then why would, and I've not looked at the exact language of the assignment. But why wouldn't that assignment be sufficient to give you the case in controversy, not necessarily between the insurance company and Lee, but between the insurance company and Lee's assignee? You've still got the same interest, they're just held by different parties. The interest in the insurance policy is no longer held by Lee. It's held by the assignee of the operation of the assignment, but that there's still an adverse interest there between the assignee who wants that injury to be covered under the policy, and who can now subrogate to these interests, and the insurance company. There's still an adverse interest there, enough to give you a case of controversy, isn't there? But Mr. Kittners, who was the assignee, was never made a party to the suit, even though he actually substituted it. Mr. Lee, who no longer had any interest at all, it was no longer adversarial. But he would be part of the suit. I'm sorry? Why would Kittner be a part of the declaratory judgment? Because he would. But the contract's not between Kittner and, what is his name? It's not Kittner. Kittners. Kittners. It's not between Kittners and Lloyds. It's between Lee and Lloyds. That's the contract. And then after that, the contract is between the assignee and Lloyds of the operation of the assignment. Kittners is not involved in that. Mr. Kittners, through a legally binding contract, acquired all of Mr. Lee's rights in the insurance policy. So, yes, Mr. Kittners would have had to have been substituted in, or else the court would have had to dismiss. Oh, I see. You're saying, okay, Kittners is a minor intervener. Yeah. We're not talking about a successor corporation here. Right. We're talking about a non-party. And in that case, he had to have been Mr. Kittners, at the time he acquired the rights under the policy, had to have been substituted in, like was requested, or the case should have been dismissed for lack of case and controversy. It was over between Mr. Lee and Lloyds. The real dispute now was between Lloyds and Mr. Kittners. Right. Mr. Kittners tried to get in. And where is Mr. Kittners' appeal of the district court's denial of his motion to intervene? He has the district court to this day has not allowed him in, Mr. Kittners. Right. But there's an order, I assume, denying his motion to intervene. He denied his motion to intervene, denied his motion to substitute. And where's the appeal of that? His motion to intervene and substitute? There is no appeal on that. Mr. Kittners filed his claims in the superior court. Mr. Lee is pursuing this appeal for the purpose of ensuring that the case is dismissed for lack of subject matter jurisdiction. Because the summary judgment opinion, when it was entered, was voted. But what you're saying, the real problem here, you're arguing, is it's the district court's ruling on the declaratory judgment. Put that aside. Let's assume that the district court was right in concluding that the exclusion covered this. The real problem you're saying is not the declaratory judgment action per se, but the fact that Kittners was not allowed to intervene in that action. And in doing, in preventing Kittners from intervening, the district court's jurisdiction that it initially had was divested. And there's no mechanism to get at that, because you're not suggesting that's an interlocutory order, are you? That Kittners could not have appealed the denial of his petition to intervene? I've never seen that. I don't know if that's available or not. No, but the reality is, if the court didn't intervene, then the case should have been dismissed, because there is no jurisdiction. And you can raise subject matter jurisdiction at any point, even on appeal. The court had no jurisdiction. By your logic, there's no one there to move for dismissal. I guess the district court had an obligation to do it on its own. But George is not going to move to dismiss it. Well, that's why, to the extent Mr. Lee has any, Mr. Lee is here because he's the only person left, because the court didn't allow Kittners to substitute. He is here taking this appeal so the court, this court, can order the district court to dismiss it for lack of subject matter jurisdiction. Amazing. It's interesting. No, it's not interesting. It's amazing. It's even worse than I thought. Coming in, I started by saying this was the most confused thing I'd ever seen. It's worse than I imagined it was. Well, you know, if you don't have jurisdiction and you're not going to substitute, that's the difficult part, if you choose not to allow a party who's actually the real interest. But I didn't focus on the problem with the intervention. That does create real issues. I'm not saying it was right, but that does create a real issue. It's an issue. And so the court denied the motion to intervene and substitute. The only other alternative was to dismiss, and he did not. He proceeded to adjudicate the matter on the merits, and to the extent he did that, that's erroneous. He had no jurisdiction. It was supposed to be dismissed. As a practical matter here, very practical matter, Nail's time is, I'm sure, judgment-proof, and the case, as far as you are concerned and as far as Kittners is concerned, is only worth something if Lloyds and or an insurance carrier remain somehow involved. Right? That's an easy yes. Well, yeah, yeah, yes. So you've got to keep the carrier somehow involved. Well, there's the carrier, and then there's the insurance agency also. Well, yeah. That's Sterling. Marshall and Sterling. Yeah. Yeah. And these are, I mean. And they're in the superior court. I'm sorry? They're in the subsequent suit. In the superior court, yes. And the reality is that this is not, you know, contract reformation, fraud claims, fraud and inducement claims. These aren't fake claims. These things actually happen, and you have to expect that, you know, you can litigate these claims if you were sold something that turned out to be a complete waste. Who's their insurer? I hope it's not Lloyds. I'm sorry. Who is their insurer? Marshall. Marshall and Sterling? Right. I don't know. Lloyds is who they sell policies for. Is the efficacy of this consent judgment and the underlying assignment before the court in the other action, in the collateral action? No, not at this point in time. It may be raised at some point in the proceedings. Oh, I would fully expect that if I were the carrier. And this is why the fact that summary judgment was entered when the court had no jurisdiction becomes important to have it reversed because if you don't have jurisdiction over something and the person who has all the interests asks to come in and you don't allow them to, your only alternative was to say there is no longer any jurisdiction, it's over, go litigate your claims elsewhere. That was not done. This is why this appeal has to be taken so that we can have the summary judgment ruling off the record. Any more questions, I will cede for my rebuttal. Thank you. Good afternoon, Your Honors. It was until this case was called. Just for the record, Gary Garden for certain underwriters of Lloyds. I guess the simplest way to look at this is just take Neil's time at what they just said. They didn't have standing to file the appeal. It's over. If you believe them. We don't believe at the time. I'm sorry, could you speak into the mic a little bit? That's better. We don't believe that the timing is correct of when Neil's time lost standing. But certainly they just told you that Neil's time didn't have standing. And under their version of events, they lost it sometime in September or October, which means they didn't have jurisdiction or they don't have standing to file this appeal. Wait, back up. Are you saying they don't have standing because of the assignment? I believe the assignment does not grant what she says. I believe it is the entry of the consent judgment. But just based on their own admissions at the moment, they are saying that Neil's time had no interest in this case as of September or October. So why is Neil's time here? The reality is that there are two duties in an insurance contract, as your honors know from your own cases, K-divers, defense and indemnification. We were litigating indemnification because defense was already being provided under a reservation of rights. In that case, Neil's time is in control of that defense, not Lloyd's. Lloyd's just pays for it. So once the coverage matter is determined, and by the way, your honors correct, the coverage matter, whether it's between Neil's time and Kittner's or, excuse me, Neil's time and Lloyd's or Kittner's and Neil's time continues because the whole issue is, is there coverage? So that does continue until December 27, 2013, no matter what anybody says. But the reality is once that determination is made in December 27, 2013, there is the duty of terminating the defense. You can't just terminate a defense because it's a good faith obligation to provide a good defense. So it's not that Lloyd's can look at the guy and say, we're not going to pay you anymore. He's going to look at him and say, well, you're going to have to tell your client either he's going to start paying you or you're going to have to substitute in. That requires the Kittner's judge approval. That all occurred essentially roughly at the same time they got a consent judgment. So that negated us having to do anything. That is, the defense terminated by operation of law, the consent judgment. You're saying even aside from the declaratory judgment ruling? Sorry? You're saying even aside from the declaratory judgment ruling, the action of Lee and Kittner's terminated any obligation? Is that what you're arguing? I'm not sure I understand the question. I'm not following you. I'm trying to figure out what you're arguing to me. I'm not suggesting that you're wrong. I'm just trying to make sure I'm with you. There is a defense obligation. Once the coverage determination was made December 27, there's no coverage. Okay, so now the question is terminate the defense. The defense is independent of Lloyd's. It's provided as a separate mechanism under the insurance policy. There's an effort of certain events that have to occur in an ongoing litigation to terminate a defense. In this case, the termination was Nailstein, who was directing the defense, instructed the defense counsel being paid by Lloyd's to sign a stipulation to enter a consent judgment on May 7th. Nailstein was directing the defense. I assume, and I just did assume, I didn't see anyone on the record, that under the provisions of Lloyd's policy, they retained the right to direct the defense. That's the way it always works. Does it not work that way? The law of this jurisdiction has been, under Kay Diver's, your own case, is that when you say that you're going to file a declaratory judgment action, you are adverse to your own insured. So when you do a defense, you have an obligation to give an independent defense counsel, who is controlled by the insured. Well, obviously the counsel has an ethical obligation to do the correct defense, but it's the insured and the counsel together. Lloyd's is not telling them, hey, don't do an IME, hey, do an IME. That's not what's happening. Lloyd's is ceding authority away and paying for it, and that's the issue to defray any potential bad faith if coverage is found later. These are two obligations that aren't necessarily coexistent, I believe, is the word that this circuit has used in Kay Diver's. So you have to deal with the defense separately. So the controversy continues between Nailstein and Lloyd's until that defense is terminated. As it turns out, the kit nurse judge was very clear about the consent judgment. They said that the signing by Nailstein meant nothing. It was that it was going to require stipulated motion by both counsel, and that's in the Exhibit A to my brief. You will see the order from the kit nurse judge before she would enter a consent judgment, which is in accord with international, local, Supreme Court case, pretty much all the progeny about what it takes to get a consent judgment. Pretty standard stuff. And she set a trial date. So guess what? We still have a defense counsel being paid by Lloyd's who's independent of Lloyd's who's got a trial date. So one of a couple things is going to happen. Either he's going to have to look at Nailstein and say, Lloyd's isn't going to pay for this anymore, you have to get a new counsel, substitute, get court permission, or they have to terminate the case by consent judgment, or they're going to have to try it. What happened is it got terminated by consent judgment. That signature on that May 7th document, which is in Exhibit A of my brief, is our defense counsel, Lloyd's defense counsel that was paid for Nailstein. So there was a continuing controversy until that happened. At that point, the defense terminated, and all issues between Lloyd's and Nailstein terminated. If you take them at their word that Nailstein had no interest in this case as of September 10th or 11th when the assignment was signed, that's a pretty big problem, because in their own motion to substitute, which is cited in my brief and it's in the appendix, they specifically said there is an ongoing defense with IMEs and a mediation to occur. You can't have a good-faith mediation if both parties are on the same side already. You can't ask Lloyd's to come in and pay money in a good-faith mediation if Nailstein and Kittner's interests were already settled. There would be no mediation. That would be a collusive or a fraud. That's actually true. So, I mean, if you look at what they themselves said in their own motion, they don't even believe that the assignment terminated Nailstein's position in this case. Moreover, Rule 25 says right on its face that you don't have to take the transferee into the case. It's up to the judge's discretion. And in this case, as Your Honor pointed out, there was already a controversy that continued. That is, is there coverage? Even Kittner's has to know if there's coverage. So there's already existing controversy that's going to continue. That controversy ended December 27th, 2013. What remained was these other issues. We submit that Nailstein had no standing to bring this appeal. These other issues. As to Lloyd's, what were these other issues? Lloyd's didn't have any of them. They had filed it. The other side had filed an objection to the magistrate's view that the answer, counterclaims and third-party claim were untimely. And that objection was still pending. And, in fact, that's the second part of this. We don't believe this appeal is timely at all. No matter what you think of the December 27th, 2013 judgment, one thing we all agree, that on March 20th, 2014, this case was over. Every single issue had been resolved. Every single order had been entered. And, in fact, the appellant on pages 7, 8, and 10 of their own reply brief say this. They say every, quote, adverse interlocutory order was resolved. So what we do know, if you take page 2 of the appellant's reply brief, is that the appellant clock started to tick when the final order was done. That's March 20th, 2014. They had 30 days. The appeal was filed June 25th, 2014, 96 days later. So we have two things going on here. One is our position that Nailstein never had standing to file an appeal, period. Second, the appeal is untimely. The last thing I want to mention in this little area of this part of this argument is that they have cited cases that say that the appellate court's obligation is to vacate the orders below it if the case becomes moot. The problem with all of those cases is that there are issues where the appellate issue became moot during the appeal, during the appeal. If they're taking them at their own word and taking us at our word that it became moot March 20th, 2014, or the date of the consent judgment, May 21st, 2014, it became moot before the appeal started. That's why we say that Nailstein had no standing to file the appeal, the appeal was untimely, and that the remedy would not be to vacate anything. That case was over, whether they liked the results or not, or whether they liked the orders or not. One thing we all know is that the insurance policy doesn't cover the claim. That's not even remotely suggested in this appellate brief by Nailstein. Everybody can see that. It's pretty clear. Whatever we want to call the December 27, 2013 order, the reality is it resolved the coverage position. At that time, it's important to know, December 27, 2013, there were no other claims pending in this case. Nothing. Everything was struck. In fact, there wasn't even an answer. There was an unopposed motion for summary judgment. Nailstein did no discovery. There was a motion filed by Lloyds on this unopposed motion for summary judgment asking it to be decided. It was decided. It said, you know what, motion for summary judgment granted against Johnny Lee Nailstein. And in that motion for summary judgment, it asked for the exact same relief as in the complaint. And under 28 USC 2201, the Declaratory Judgment Acts, you don't have to do anything more than say the judgment, the declaratory relief is granted. And that's what this did, whether we like the form of it or not. If there are any questions, I'm happy to answer them. Thank you very much. Thank you, Your Honors. Thank you. So there seems to be confusion between when there's nothing left to resolve and when a separate document has to be entered. So your appellate rights are triggered when that separate document, that separate judgment is entered. That's different than there's nothing else to be resolved. You cannot tax the failure to enter a separate document against the person whose appellate rights would be. Well, nothing else to be resolved would go to whether or not you've got a final appealable order. There was nothing. In March 27th, was there anything further to do? On March 27th, no, there was nothing further to do except for the court to enter a separate document as required by Rule 58. There has never been a separate document entered here. Summary judgment motions are required to have separate judgments. That has never been done. Your appellate rights cannot be triggered unless there is a separate document. The only reason the appellate rights were technically triggered was because of the 150-day rule. Even the Laboon case, your case, supports this position. You cannot harm the appellant when to this day there has not been a separate document. If you were to do that, then that would mean that the separate document rule would be null and void. You have to enter a separate judgment. That still has not been done. Even the March 20th opinion, there was no separate document. It was an amended opinion and order. There was never a separate judgment entered in this case. So for purposes of appeal, whether or not in March 20th there was nothing left to be decided, that has nothing to do with the requirement to enter separate judgment. Only upon entry of separate judgment are appellate rights triggered. That's the way the rules are. That's the way the analysis goes. And you cannot harm the person whose appellate rights would be triggered. Now, in terms of standing, if it's the case that there is no standing to take this appeal, it's the case that there was never any subject matter jurisdiction for the district court to have entered separate judgment on December 27th, 2013. Why is that true? Because the declaratory judgment action is very different than normal actions. And as you said earlier, at the time, I thought maybe we didn't agree, at the time the declaratory judgment action was filed, there was no doubt whatsoever that there was a case in controversy. It's a classic. You've got a contract dispute. It's an insurance contract. The two parties to the contract disagree about the meaning of the language in the contract, and particularly here, whether or not the contract language that's called exclusion would prevent the other part of the contract from recovering for any losses. That's pretty basic. Yeah, but case in controversy has to survive throughout the entire proceeding. It's not just when the case is filed. It has to be maintained throughout the entire proceeding. That goes back to the discussion with Mr. Garten that the controversy continued. The locus of the controversy may have changed because of the assignment of the interest under the contract, but the controversy in terms of the juxtaposition of rights, of adverse rights, that was still there. But you filed a DEC action pursuant to the DEC action act, which requires there to be a live controversy between two parties. You keep on forgetting the parties aspect. These parties to this DEC action, there actually has to be a controversy. When Mr. Lee assigned his rights under the policy,  the DEC action makes it even more particular because you're invoking the jurisdiction of the court pursuant to a particular statute. That's why the motion to intervene was so crucial because that's what was needed to have the controversy between the parties, to get the new party in. And what's the alternative? Is the alternative the failure of the court to exercise the intervention? If you don't intervene, you have to dismiss. Those are your options. And the court didn't do either. He failed to substitute, intervene, and dismiss. And, therefore, it becomes this court's. Well, how do you avoid the situation? I kind of mentioned this to you earlier, and I'm not suggesting that was the motive here. I don't know what was the motive here. But how do you prevent a situation where declaratory judgment action is filed, it's going to trial, the insured does not particularly like the way this trial is going? There's language, there's testimony that wasn't anticipated. It becomes pretty clear to the insured that the insured is going to lose. So the insured assigns its rights under the policy to somebody else and then says to the court, wait a minute, court, you've got to dismiss this declaratory judgment action. You can't rule on it now because there's no adverse parties. The parties are no longer adverse to one another. How do you prevent that from happening? How do you prevent what from happening, from them losing interest? Basically, all of it is declared to a judgment action in an insurance dispute by the insured assigning their rights out and then saying, you no longer have a case or controversy because you don't have a controversy between the parties. I would amend this party that the insurance company filed the declaratory judgment against. I no longer have an interest because I assigned my rights. I guess the insurance company would then file against the assignee under the contract. But that's why you allow Rule 25 substitution. But we're acting as if there was no alternative. So if you assign your rights over and the person with their rights says, hey, hey, let us in, let us in, let us in, you let them in. Or if you don't let them in, you dismiss, and then Lloyds will have to refile against the actual person. There was only one person he could actually substitute, I guess, his interest to, and that was Kit Nurse because they had a litigation going on in the district court in another case. And so you have to substitute. And if you didn't do that, you have to dismiss. And that's why we're here to have the district court do what it should have done to begin with, was to evaluate its subject matter jurisdiction throughout the proceedings. And as soon as it was no longer the case that there was a case and controversy between these parties as required by the DEC Act and Article III. Could Kit Nurse have, and I don't know the answer to this, could Kit Nurse have appealed, I asked her, the denial of the motion to intervene, could Kit Nurse have appealed that? But Kit Nurse wasn't a party. I guess he wasn't, at that point in time, he was trying to get in. He had no status at that point in time. Unless the court lets you in, you have nothing. So if he didn't let you in, you have to dismiss.  That's exactly why you're required to dismiss, because all these other procedural problems come in. If the real person is not in the litigation, you have to dismiss, because there's no longer a case and controversy. To the point, to the extent that it is understandable, I understand your argument. I really want to compliment both counsels. Really outstanding argument on the part of both Ms. Lawrence and Mr. Gorton. I really thank you for your argument, your time, and your presentation. Really a splendid job of both of you. You can take that back to your respective supervisors. Very nice job. Thank you very much.